Receipt number AUSFCC-11279718

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

GARY PITTMAN,

   Plaintiff,

  v.

UNITED STATES OF AMERICA
AND JENNIFER IVEY-
CRICKENBERGER,

   Defendants.

Civil Action No: 26-787 C

*Electronically Filed*

## COMPLAINT IN CIVIL ACTION

AND NOW, come Plaintiff, Gary Pittman, by and through his attorneys, George R. Farneth II, Esquire and The Farneth Law Group, LLC, and files this Complaint in Civil Action, averring as follows:

1. Plaintiff, Gary Pittman ("Pittman"), is an adult individual who, at all times pertinent hereto, resided and worked in the Middle District of Pennsylvania.

2. Defendant, United States of America ("USA"), is the party that owns, operates, and maintains the U.S. Department of the Navy and the Naval Supply ("NAVSUP") Business Systems Center, their divisions and subdivisions, and their employees.

3. Defendant, Jennifer Ivey-Crickenberger ("Ivey"), is an adult individual who, at all times pertinent hereto, was an attorney who resided in and worked for the USA in the Middle District of Pennsylvania.

4. At all times pertinent hereto, USA was acting by and through its authorized agents, servants, employees, representatives, staff members and ostensible agents, including but not limited to Ivey, Christopher T. Cromie ("Cromie"), Glena Mackey ("Mackey"), Angelo Raciti

("Raciti"), and Daniel Droddy ("Droddy"), all of whom were then and there acting within the course and scope of their employment or apparent employment with and in furtherance of the business operations of USA and for whom USA is legally responsible.

## JURISDICTION AND VENUE

5.      This action arises under the laws of the Commonwealth of Pennsylvania.

6.      Pursuant to the Tucker Act, 28 U.S.C. §1491, this action is within the subject matter jurisdiction of this Court.

7.      Venue for this action is proper in this Court.

## STATEMENT OF FACTS

8.      At all times pertinent hereto, Plaintiff was a Deputy Director for the NAVSUP Business Systems Center which is the Navy's premier information technology (IT) provider with the responsibility to design, develop, and maintain information systems supporting the functional areas of logistics, supply chain management, transportation, finance, and accounting.

9.      At all times pertinent hereto, Plaintiff was stationed at Naval Supply Systems Command, Business Systems Center, Mechanicsburg, PA.

10.     Between February 2025 and October 2025 Plaintiff was the victim of discrimination, a hostile work environment, and other inappropriate treatment in the Workplace ("Discrimination").

11.     In October 2025 Plaintiff filed an informal complaint with Droddy regarding the Discrimination ("Complaint").

12.     Plaintiff believes USA investigated the Complaint after which USA proposed that the parties participate in mediation.

13.     Droddy worked with the parties to schedule the mediation for February 19, 2026.

14.     USA appointed Mackey and Raciti to serve as co-mediators.

15.     USA also appointed Cromie, an Executive Officer, to serve as its authorized representative throughout the mediation.

16.     Once the mediation was scheduled, it was the responsibility of each party to ensure that everyone it deemed to be necessary participants were informed of the scheduled mediation and their attendance at the mediation was secured.

17.     The parties proceeded with the mediation on February 19, 2026 which was conducted by Microsoft Teams.

18.     In addition to Mackey, Raciti, and Cromie, Plaintiff and his attorney participated in the mediation which lasted over five hours.

19.     On numerous occasions during the mediation, Cromie represented that he was designated to represent the USA in the mediation and he was fully authorized to negotiate on its behalf.

20.     Under the circumstances and based on the representations he made throughout the mediation, Cromie at all times had actual and/or apparent authority to act on behalf of and bind USA.

21.     During the mediation, the parties negotiated back and forth the terms and conditions of a potential global settlement that would result in the resolution of the Complaint.

22.     Ultimately the parties agreed to the following terms and conditions ("Settlement"):

   a.     The Navy agreed that Plaintiff's promotion to GS-14 would be retroactive to May 1, 2025 with time and grade;

   b.     The Navy agreed to pay Plaintiff $120,000 to compensate him for the personal injuries and damages he suffered as a result of the Discrimination;

   c.     The Navy agreed to promptly reimburse Plaintiff for the costs he incurred for counseling from May 1, 2025 through February 19, 2026 (before

payment is due, Plaintiff will provide an account statement or invoices and receipts to verify the cost of his counseling);

d. The Navy agreed to pay Plaintiff's counsel $12,500 for attorneys' fees and costs incurred;

e. The Navy advised that it was in the process of scheduling and agreed to promptly proceed with training for all employees in the Business Systems Center with the training to include instruction on discrimination, harassment, and the obligation to keep personnel matters confidential.

f. The Navy agreed that Cromie and/or another appropriate supervisor would meet privately with Toan Ngo and Megan Nichols to explain the significance of what had occurred, explain the need for change on their respective parts, and directing them to refrain from having any contact with Plaintiff, except for contact between them that was incident to and necessary for the performance of Plaintiff's duties.

23. As the parties negotiated the various terms and conditions of the Settlement, Cromie represented to all in attendance that each term and condition of the Settlement was "within my authority."

24. At all times, Plaintiff and all others in attendance during the mediation reasonably relied on Cromie's representations regarding his authority to agree to the Settlement.

25. The Settlement was reduced to writing with Plaintiff and Cromie acknowledging their agreement with the terms and conditions of the Settlement. Two different copies of the Settlement are attached hereto as Exhibit 1 and are incorporated herein by reference.

26. Because it was the product of an offer, acceptance, and consideration, the Settlement represented a mutual, fully enforceable agreement to settle Plaintiff's claims.

27. Plaintiff believes that Mackey and Raciti will confirm that they understood that Cromie had full authority to negotiate on behalf of USA and he did, in fact, agree to each of the terms and conditions of the Settlement as set forth in paragraph 22 above.

28.    Plaintiff also believes that Cromie will confirm that he had, or believed he had, full authority to negotiate on behalf of USA and he did, in fact, agree to each of the terms and conditions of the Settlement as set forth in paragraph 22 above.

29.    By email correspondence dated February 20, 2026, Ivey attempted to rescind the Settlement on the basis that she did not know the mediation was occurring on February 19, 2026 and was thus absent and because Cromie "did not have settlement authority to make this agreement."

30.    Ivey went on to say "[a]s such, the agency is rescinding the settlement offer at this time.

31.    Contrary to Ivey's claim, neither Pennsylvania law, nor Federal law requires a party to be represented by counsel during a mediation and, therefore, the claim that her absence somehow enables USA to void the Settlement is erroneous and unsupported by applicable law.

32.    Under the specific facts of this case, consistent with Pennsylvania law and Federal law, and contrary to Ivey's claim, Cromie did have at least apparent, and likely actual authority to negotiate on behalf of USA, agree to the Settlement and bind USA to timely consummate the Settlement.

33.    In an email correspondence dated February 20, 2026 that was sent in response to Ivey's email, Plaintiff made Ivey, and correspondingly USA, aware of his intent to file this lawsuit if the Settlement was not promptly consummated.

34.    In an email correspondence dated February 27, 2026 that she sent in response to the notice of intent to file this lawsuit, Ivey claimed that [i]t's the Agency's position that the teams chat created during the mediation is not a valid settlement agreement for several reasons, including there is no consideration."

35. Contrary to Ivey's claim, because the Settlement resulted in the resolution of the Complaint and precluded Plaintiff from further pursuing, there was more than adequate consideration for the Settlement.

36. In fact, the Settlement that was reached during the mediation the USA requested, scheduled, selected the mediators to preside over, and designated Cromie to attend on its behalf, is exactly how lawsuits, pre-suit or during litigation are settled in the real world.

37. Given that her efforts to rescind or attempt to void the Settlement are based on the aforementioned erroneous assertions, Ivey's actions can only be viewed as malicious and specifically designed to harm Plaintiff and to cause him to suffer additional damages.

38. Plaintiff believes that, at no time, did USA authorize Ivey to rescind or attempt to void the Settlement or embroil it in this litigation.

39. Accordingly, Plaintiff believes all of Ivey's actions to date have been outside the scope of her employment and outside any authority USA extended to her.

40. As a result, Ivey is not entitled to immunity

## COUNT I

### PLAINTIFF v, DEFENDANT, UNITED STATES OF AMERICA

### **BREACH OF CONTRACT**

41. Plaintiff incorporates herein by reference as though fully set forth at length the averments set forth in paragraphs 1 through 40 above.

42. To prove a breach of contract claim in Pennsylvania, a Plaintiff must prove (1) the existence of a valid contract, including an offer, acceptance and consideration; (2) performance by the plaintiff; (3) a breach by the defendant; and (4) damages resulting from the breach.

43. For the reasons set forth above, Plaintiff has established all four elements of a breach of contract claim, including damages in the minimum amount of $132,500, plus interest and additional attorneys' fees and costs and the other benefits he was to receive as part of the Settlement which are all the direct, proximate, factual, and legal result of USA's breach of contract.

WHEREFORE, Plaintiff, Gary Pittman, demands judgment in his favor and against Defendant, United States of America, in an amount of $132,500.00, together with interest, costs, attorneys' fees, and such other relief as this Court deems appropriate.

## COUNT II

### PLAINTIFF v, DEFENDANT, JENNIFER IVEY-CRICKENBERGER

### INTENTIONAL INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL RELATIONS

44. Plaintiffs incorporate herein by reference as though fully set forth at length the averments set forth in paragraphs 1 through 43 above.

45. To prove a claim for intentional interference with contractual relations in Pennsylvania, a Plaintiff must prove (1) a valid contract or relationship; (2) knowledge by the Defendant; (3) intent to harm; (4) actual interference; (5) inappropriate conduct; (6) damages; (7) the absence of privilege or justification.

46. For the reasons set forth above, Ivey's actions were not privileged or justified.

47. Under the circumstances, Ivey is not entitled to immunity for her actions.

48. For the reasons set forth above, Plaintiff has established all four elements of a breach of contract claim, including damages in the minimum amount of $132,500, plus interest and additional attorneys' fees and costs and the other benefits he was to receive as part of the Settlement which are all the direct, proximate, factual, and legal result of USA's breach of contract.

WHEREFORE, Plaintiff, Gary Pittman, demands judgment in his favor and against Defendant, Jennifer Ivey-Crickenberger, in an amount of $112,500.00, together with interest, costs, attorneys' fees, and such other relief as this Court deems appropriate.

Respectfully Submitted,

**THE FARNETH LAW GROUP, LLC**

By: */s/ George R. Farneth II*
George R. Farneth II, Esquire
445 Fort Pitt Blvd., Suite 160
Pittsburgh, PA 15219
Tel: (412) 863-7092
Fax: (412) 586-4713
Email: grf@farnethlaw.com
PA ID No.: 53914

*Attorneys for Plaintiff,*
*Gary Pittman*